# Bank of Mobile *et al. v.* Dunn *et al.*

*Bill in Equity, by Assignees, for Directions as to Execution of Trusts.*

1. *Construction of conveyances, object of.*—The object of all construction of contracts or conveyances is, to ascertain, and if possible, give effect to the intention of the parties, and if that intention is not clearly or distinctly expressed, if the words of the instrument are general, or, if there is ambiguity or expression admitting of two or more constructions, that construction must be adopted which will make the instrument available in all its parts, and for all its purposes, rather than one which would defeat it in any respect.

2. *Assignment for benefit of creditors; construction of.*—Assignments for the benefit of creditors are subject to the same rules of construction which are applied to other contracts or conveyances, and the circumstances surrounding the parties when the assignment was executed, the motives leading to its execution and the objects to be acccomplished, should, if there is a want of clearness in its terms, leaving the intention doubtful or uncertain, be regarded in construing them.

3. *Same; description of debts included in.*—No narrowness or closeness of construction is adopted in assignments for the benefit of creditors; if, upon a fair and just interpretation of the terms of description of the debts included therein, they are broad enough to comprehend a particular debt which is not within its precise words, it is sufficient.

4. *Same; rule applied in this case.*—Where a debtor in failing circumstances assigned all his individual property for the benefit of his individual creditors, who were to be paid in full, directing the surplus to be applied equally to the payment of the debt due several named mercantile partnerships, of which he was a member, a debt due by another dissolved partnership not specially named, of which the assignor was a member, and whose debts on its dissolution he assumed and promised to pay, is an individual debt within the terms of the assignment.

APPEAL from Mobile Chancery Court.
Heard before Hon. H. AUSTILL.
On January 31, 1874, James Crawford, of Mobile, assigned

all his individual property to W. D. Dunn and W. G. Jones, in trust, for the payment of the debts due by him to his individual creditors, equally and ratably, and if there should be any surplus remaining of the proceeds of such property, after paying his individual creditors, that such surplus should be applied to the payment of the debts and liabilities of mercantile firms, of which he then was, or had been a partner. Schedules of the property conveyed, and of the individual debts of James Crawford were attached to the assignment. The assignees were creditors of James Crawford, and filed their bill, alleging that fact, and many others, to show that they were entitled to be directed by the Court of Chancery, in the proper management and execution of the trusts imposed on them by the assignment. A copy of the assignment was attached to the bill, in which, after reciting that James Crawford had been for many years engaged in business individually in Mobile, and also as member of various mercantile partnerships, which are named, in Mobile and New York, and by reason of losses sustained by these partnerships, had become unable to pay his individual debts and liabilities, and having a large amount of property, and being desirous that all his individual property should be applied to the payment of each and all his individual debts ratably, and that the surplus of such property, if any, after paying such individual debts and liabilities, should be applied to the payment of the partnership debts of the said several mercantile firms, of which he was a member, assigned all his individual property to W. D. Dunn and W. G. Jones to sell as they deemed best, directing them to collect all claims due, &c., and giving them full power as to these matters, and directing that all his individual debts or liabilities should be paid in full, but if such debts were omitted by accident or otherwise from the schedules attached, they were nevertheless to be paid in full, as if they were included therein, and if the money arising from the sale of the property should be insufficient to pay such debts in full, they should be paid pro rata. The surplus, if any, after paying the expenses of the trust and the individual debts, should be used for the "payment of the partnership debts of the said several mercantile firms, of which the assignor was, or is, a member." There was a reference to the register to ascertain who were the individual creditors of James Crawford, and he reported a number of names, but reported that the Bank of Mobile, and the Citizens' Mutual Insurance Co. were not individual creditors of James Crawford. The facts in regard to these claims were that they were created originally by James Crawford individually, and that afterwards there was a partnership of

Crawford & Son, which was composed of James Crawford and his son, Robert C. Crawford, and the notes evidencing these claims were signed James Crawford & Son, and James Crawford assumed all the liabilities of this firm when it was formed, and assumed and promised to pay all the debts when it was dissolved. The Bank and the Insurance Company excepted to the report, but the exceptions were overruled and a final decree rendered, in which their claims were subordinated to the payment of the individual debts. This decree is assigned as error.

OVERALL & BESTOR, for the Bank of Mobile, and HANNIS TAYLOR, for the Citizens' Mutual Insurance Co., insisted that the debts due by James Crawford & Son, were the individual debts of James Crawford, and should be paid as such.

· GAYLORD B. CLARK, and FRANK B. CLARK, for appellee. The claims of the Bank of Mobile, and the Citizens' Insurance Company, were presented as debts of the firm of James Crawford & Son, and are partnership debts, and if provided for at all in the assignment are provided for as such. The fact that James Crawford assumed the debts of the firm of Crawford & Son made no difference, for it was only a matter between the two partners, and this is a contest between creditors.

BRICKELL, C. J.—Assignments for the benefit of creditors are subject to the same rules of construction which are applied to other contracts or conveyances. The object of all construction is to ascertain, and, so far as it is possible, to give effect to the intention of parties. If the intention is not clearly and distinctly expressed—if the words of the instrument are general, or, if there is ambiguity of expression, admitting of two or more constructions, that construction must be adopted, in obedience to the maxim, *ut res magis valeat quam pereat,* which will make the instrument available in all its parts, and for all its purposes, rather than a construction which would defeat it in any respect.—*Tarrer v. Rappe,* 7 Ala. 873 ; *Shackelford v. P. & M. Bank,* 22 Ala. 238. The circumstances surrounding the parties when the assignment was executed, the motives leading to its execution, and the objects to be accomplished, should be regarded in construing it ; for, if there is a want of clearness in its terms, leaving the intention in uncertainty or doubt, these may often remove it. Burrill on Assignments, 374.

It is obvious, that when the assignment was executed, Crawford was in failing or insolvent circumstances, and that

his purpose was the appropriation of all his individual, separate property to the payment of his debts; all property of which he had the sole and exclusive power of disposition, as distinguishable and separable from the property and assets of the several partnerships of which he had been, or was, a member, mentioned in the assignment as then, or previously, existing. There is no reservation, or exclusion, from the operation of the assignment of any other of his property, distinguishable and separable from the property and assets of these partnerships, than such as was by law exempt from the payment of debts. The intent to assign and transfer all such property, subject to the specified reservation, whatever may have been its kind, or whatever the nature of the title to it, is clearly expressed, not only in the recital of the objects, purposes, motives, and considerations leading to the execution, but in the granting clause of the assignment. It is also apparent that the assignment is framed in view of the statute, (Code of 1876, § 2126), which converts every general assignment into an equal security for the benefit of all creditors, annulling all preferences which may be expressed in it. The assignment gives a preference to the separate, individual creditors of the assignor, who are to be fully paid; and then, if there be any surplus of assets, it is to be applied equally to the payment of the creditors of the partnership mentioned. In this respect, the assignment conforms to the principle upon which a court of equity would proceed in marshalling and distributing the joint and separate property of partners, to joint and separate creditors; applying partnership assets first to pay partnership debts; giving the individual creditors of each partner an equal and ratable proportion, with other individual creditors, of the share of such partner in the partnership assets remaining after paying partnership debts, and giving him preference of payment from the individual, separate property of the partner. In other words, first paying partnership creditors from partnership assets, and individual creditors from separate assets. Story on Part. § 363. The only partnership debts for which the assignment provides, and the only debts subordinated in payment, are the debts of the partnerships which are mentioned in the assignment. The words of the assignment, descriptive of the debts secured, or intended to be secured, are, "each and all of his own individual debts and liabilities, and, in addition thereto, the debts and liabilities of the said several mercantile firms."

The point of contention now involved is, whether the debts of a mercantile firm, of which the assignor was a partner, not mentioned in the assignment, which had been dissolved sev-

eral years prior thereto, the assignor promising, when the dissolution occurred, that he would pay such debts, are *individual debts and liabilities* within the meaning of these terms, as employed in the assignment, entitled to share in the preference created by it. If these debts are not embraced within this description, they are not entitled to share in any event in the distribution of the property assigned; for they are not, certainly, within the other description, *debts and liabilities of the said several mercantile firms* mentioned in the assignment. To this extent, the intention to provide for the payment of all the debts of the assignor, clearly disclosed, in the order in which a court of equity would devote the assets, would be defeated; and it may well be questioned, if the preference created by the assignment would not by the statute be annulled, so far as such debts are affected. The *separate estate* of a partner is that in which his co-partners have not a joint interest with him—in which he has a right and interest disconnected from the partnership; and it may consist of his interests in other partnerships.—Collyer on Part. § 880. So the individual, *separate,* debts of a partner may be the debts of other partnerships than such as are specifically referred to in a particular instrument. These terms, *separate* estate, and *separate* (or individual) debts, may be, and are often, used relatively. Such is the use of the terms *individual* and *partnership* debts, in this assignment; the latter designating all the debts and liabilities of the mercantile firms mentioned; and the former, all other debts and liabilities of the assignor, which are individual debts, in relation to, and distinguished from, the debts of these firms. There is no narrowness, or closeness of construction, of the description of debts in assignments; it is enough that, upon a fair, just interpretation of the terms of description, though not within the precise words, they are broad enough to comprehend the particular debt. Accommodation paper, which the assignor was bound to the parties appearing on the face of it to be solely liable, to pay primarily has been regarded as embraced in the term *debts* by him *due.—Bank v. McCalmert,* 4 Rawle, 307. Acceptances of negotiable paper have been regarded as falling within the description of *notes* made or indorsed for his accommodation.—*DeCosta v. Guien,* 7 Serg. & Rawle, 462. It does not require any liberality of construction to understand the words *individual debts and liabilities,* employed in the assignment, as comprehending the debts of James Crawford & Son. They were, as between the assignor and his former partner, strictly individual debts which he was bound primarily to pay; and in the event of his death, and the insolvency of his estate, the partner as to

such debts would have shared equally with individual cred-
itors in the distribution of his *separate estate.—Hogan v. Cal-
vert,* 21 Ala. 194 ; *Peacey v. Peacey,* 27 Ala. 683. We are of
opinion the Chancellor erred in not allowing the appellants
to share equally with other individual creditors in the dis-
tribution of the funds derived from the assignment.

The decree must be reversed, and the cause remanded for
further proceedings in conformity to this opinion.