Eau Claire Grocer Co. vs. Hubbard.

EAU CLAIRE GROCER COMPANY, Appellant, vs. HUBBARD, Garnishee, Respondent.

*November 17 — December 10, 1897.*

*Voluntary assignment, construction of.*

1. In the construction of assignments for the benefit of creditors, the ordinary rules governing the construction of contracts are to be applied.

2. An assignment for the benefit of creditors made by three persons, two of whom, G. and G., were partners under the firm name of G. & Co., and they with H. constituted the firm of G. & H., recited: "This indenture by and between G., G., and H. of the firm of G. & H., parties of the first part." The affidavit as to the value of the assigned property referred to it as that of "G. & H." The assignee's bond described him as the assignee of "G. & H." He entered upon his duties as assignee of that firm. The property inventoried belonged to that firm; and the creditors scheduled

were none other than creditors of that firm. *Held,* that it was the evident intention of the parties that the assignment should be, and it was, that of the firm of G. & H. and not an individual one of the persons composing that firm.

APPEAL from a judgment of the circuit court for Trempealeau county: O. B. WYMAN, Circuit Judge. *Affirmed.*

Tostin I. Gilbert and Gulbrand O. Gilbert were partners in business at Blair, Wisconsin, under the firm name of T. I. Gilbert & Co. As such, they and Alexander C. Hallenger were partners in business at Eleva, Wisconsin. On the 12th day of January, 1894, the three persons named executed an assignment for the benefit of creditors, intending to comply with the statutes of the state of Wisconsin on that subject. The deed of assignment described the grantors in the following language: "This indenture, made and entered into this 12th day of January, A. D. 1894, by and between Tostin I. Gilbert, Gulbrand O. Gilbert, and Alexander C. Hallenger, of the firm of Gilbert & Hallenger of Eleva, . . . parties of the first part." Thereafter the three persons named were referred to sometimes as "parties of the first part," and at others as "party of the first part." The affidavit as to the value of the assets upon which the bond was based was to the effect that the nominal value of the assets of the firm of Gilbert & Hallenger, assignor mentioned in the bond of assignment, was $21,000. The assignee took possession of the property of the firm, and entered upon the duties of his trust, and complied with all the requisites as assignee for the benefit of the creditors of the firm of Gilbert & Hallenger. Thereafter this action was commenced to charge the assignee as garnishee, upon the ground that the assignment was an individual assignment of all the property of the assignors, while the bond of the assignee was given with reference only to the value of the assets of the firm of Gilbert & Hallenger. There was evidence produced to show that the firm of T. I. Gilbert & Co. had a large amount of property other than

their interest in the firm of Gilbert & Hallenger.   The case
turned on the construction of the deed of assignment, as to
whether it was a firm or an individual assignment.   The
trial court found for the defendant, sustaining the assign-
ment as that of the firm of Gilbert & Hallenger.   Judgment
was entered accordingly, from which the plaintiff appealed.

*V. W. James*, for the appellant, argued that the language
of the assignment shows that it was intended to convey the
individual property of each of the assignors.   The terms
" of the firm of G. & H." are merely *descriptio personæ*.   The
assignee's bond was insufficient, under sec. 1694, S. & B. Ann.
Stats., not being equal to the value of their individual prop-
erty.   *Williams v. Hadley*, 21 Kan. 350; *Von Wettberg v.
Carson*, 44 Conn. 289.

*C. W. Gilman*, for the respondent.

MARSHALL, J.   The maxim, "*ut res magis valeat quam pe-
reat*," — the instrument in question shall rather be made
available than suffered to fail,— applies in construing a deed
of assignment for the benefit of creditors where the language
thereof is of doubtful meaning.   If the deed will admit of
two meanings the court is permitted, when called upon for
its judicial construction, to consider all the circumstances of
its execution, the situation of the parties, the necessities that
called the instrument into existence, the motives that actu-
ated its makers, the reasonable probabilities as to what
would ordinarily be done by persons circumstanced as such
parties were, and all the facts and circumstances which led
up to and characterized the transaction, in determining just
what was intended thereby, to the end that a construction
may be adopted that will give effect to such intention if it
can be done without doing violence to the rules of language
or of law, rather than that the instrument should fail en-
tirely.   In short, the ordinary rules governing the construc-
tion of contracts between parties apply, and with peculiar

force where the manifest legislative policy points that way. *Knapp v. McGowan*, 96 N. Y. 75; *Townsend v. Stearns*, 32 N. Y. 209; *Crook v. Rindskopf*, 105 N. Y. 476; *Bank of Mobile v. Dunn*, 67 Ala. 381; Burrill, Assignments, § 285.

Applying the foregoing to the facts of this case, no serious difficulty is encountered in arriving at a conclusion as to the proper construction of the instrument in question. If we say the intention of the parties was to make an individual assignment, it would probably follow that the instrument would fail entirely for want of a proper bond, required by statute. Therefore, that construction should be rejected if the instrument will reasonably admit of another which will uphold it. This rule should be given all reasonable latitude, since the legislative policy of this state, as evidenced by recent legislation on the subject, is to favor and uphold assignments for the benefit of creditors, rather than otherwise. As before stated, in effect, where the trend of legislation is such as to show a manifest purpose to secure an equal distribution of the property of insolvents, whenever they, in good faith, make a conveyance of all their property with that intention, the courts, so far as possible, should carry out such legislative policy, and supplement it by the most liberal construction of deeds of assignment they will reasonably bear, to the end that they may be maintained instead of defeated. *Cunningham v. Norton*, 125 U. S. 77.

Looking at the circumstances of the transaction in question, we see that the parties were in business at Eleva as the firm of Gilbert & Hallenger; that they had firm property there, and as such were indebted to divers persons in divers sums of money, which they were unable to pay; and that all the circumstances, at the time the instrument was made, point to a necessity for a firm assignment and none other. Further, it appears that the deed describes the parties as of the firm of Gilbert & Hallenger; that there was no occasion for the use of the firm name as mere *descriptio*

*personæ;* that the only occasion for its use was to show the
character of the assignment itself; that the indebtedness
which the parties were not able to pay was described by
words appropriate to a joint indebtedness; that the prop-
erty assigned was described by words appropriate to joint
property; that the list of creditors to be filed was referred
to as "those for whom the assignment was made," and the
inventory to be filed was referred to as particularly describ-
ing the property assigned; that the list of creditors and in-
ventory were filed and became, to all intents and purposes,
a part of the deed; that they show only firm creditors and
firm property; that the language of the bond filed with the
deed was appropriate to an assignment by the firm of Gil-
bert & Hallenger; and that the affidavit as to the nominal
value of the assets assigned, upon which the bond was based,
referred only to firm property. It would seem that we are
hardly required, in view of the foregoing, to resort to very
liberal rules of construction, to the end that the assignment
be upheld rather than that it fail, and in order to reach the
conclusion that a firm assignment was intended and none
other. All of the circumstances and the wording of the
papers point so clearly to the purpose of the parties to make
a firm assignment, and that only, as to really leave little
doubt, if any, on the question. Any other construction
could hardly be reached without doing violence to the lan-
guage used by the parties, when viewed in the light of the
*res gestæ.* The language of the deed, in many particulars,
in fact in all essentials, is much like that in *McNair v.
Rewey,* 62 Wis. 167, where this court held that it was a firm
assignment, and clearly so. But looking at the instrument
independent of precedents, and testing it by the well estab-
lished rules of construction to which we have referred, the
decision of the trial court was clearly right. In *Williams v.
Hadley,* 21 Kan. 350, and *Von Wettberg v. Carson,* 44 Conn.
287, confidently cited by appellant, the construction given

Eau Claire Grocer Co. vs. Hubbard.

was in aid of the assignments. If the circumstances had been reversed, so that such a construction would have defeated the assignments, especially in the face of a manifest legislative policy to favor such dispositions of property by the voluntary acts of insolvents, whether the same results would have been reached is by no means certain. The cases are not considered in conflict with the decision of this case.

*By the Court.*— The judgment of the circuit court is affirmed.