LANDAUER *et al.* V. CONKLIN *et al.*

1. A general assignment by an insolvent debtor for the benefit of his creditors, being within the policy of the law, must be construed and controlled by the same rules as apply in cases of ordinary contracts and conveyances, including the presumption of good faith.

2. Sections 4667 and 4668, Comp. Laws, requiring an inventory and affidavit to be attached and filed with the assignment, are mandatory in the sense of making the doing of such acts essential to the validity of the assignment, but they are not mandatory in the sense of requiring such acts to be performed in the exact form and terms of the statute.

3. It is not essential that such inventory recite upon its face that it is a full and true inventory, showing the several matters enumerated in the subdivisions of said section 4667; the requirement being that the assignor must make and file, not what purports to be a full and true inventory, but what is so in fact.

4. The inventory in this case examined, and *held* sufficient both as to form and substance.

5. Section 4668 requires an affidavit of the assignor "to the effect that the same is in all respects just and true to the best of such assignor's knowledge and belief." The use of the very words "just and true" is not indispensable. Any equivalent words are sufficient.

6. An affidavit which in all other respects meets the requirements of the statute, but omits the word "just," is not on that account necessarily fatally defective. Farmer v. Cobban, (Dak.) 29 N. W. Rep. 12, distinguished.

7. A fundamental rule of interpretation applied to statutes, mandatory as well as directory, is that words in a statute, if of common use, are to be taken in their natural and ordinary sense, without any forced or subtle construction either to limit or extend their import.

(Syllabus by the Court. Opinion filed Jan. 25, 1893.)

Appeal from circuit court, Lincoln County. Hon. FRANK R. AIKENS, Judge.

Action by Max Landauer and others against Judson V. Conklin and Oscar Holden to set aside an assignment for the benefit of his creditors made by Holden to Conklin. There was a judgment dismissing the complaint, and plaintiffs appeal. Affirmed.

The facts are stated in the opinion.

*M. E. Rudolph* and *C. B. Kennedy*, for appellants.

A judgment not supported by proper findings will be reversed on appeal. Doty v. Sumner, 12 Neb. 378; Demming v. Weston, 5 Wis. 236. The statute requiring an inventory and affidavit annexed is mandatory. It must be strictly followed or the assignment is void and can be set aside by a creditor's bill. Farmer v. Cobban, 29 N. W. 12; Feldenheimer v. Tressel, 43 N. W. 94; Bump Fraud. Con. 536; Drake, Attach. § 225; Joseph v. McGill, 52 Iowa, 127; McMinn v. Whelan, 27 Cal. 300; Conroy v. Woods, 13 Cal. 626; Juliand v. Rathbone, 39 N. Y. 369; Rosenbum v. Moller, 4 S. W. 10; Lookout v. Noe, 5 S. W. 433; Hill v. Alexander, 16 Lea, 496; Lincoln v. Filed, 16 S. W. 288; Fechenner v. Banne, 43 Fed. 719; Scheibler v. Mundinger, 9 S. W. 33; Fort v. Martin, 1 S. E. 223; August v. Calloway, 35 Fed. 381; Fuhrman v. Jones, 32 N. W. 547; McMillon v. Knapp, 76 Ga. 161. The assignment is void because the inventory does not show the nature of each obligation, the true consideration of the liability in each case, nor the place where it arose. Bloomingdale v. Seligman, 3 N. Y. 243; Hardman v. Bowen, 39 N. Y. 196; Britton v. Larnez, 45 N. Y. 51; Fairchild v. Gwynne, 16 Abb. Pr. 23; Rennie v. Bean, 24 Hun, 123; Warner v. Jaffrey, 96 N. Y. 253. An assignment under our statute is not amendable. Burrill, Assign. § 343; Fort v. Martin, 1 S. E. 223; Conier v. Tabler, 44 Fed. 467; Turnipeed v. Schaeffer, 76 Ga. 109; Cohen v. Barton, 21 Atl. 63; Heben v. Harshaw, 18 N. W. 426.

*Arthur R. Brown*, for respondents.

The onus rested with the plaintiffs to establish by evidence that the assignment was fraudulent and void as to creditors. Pease v. Batten, 9 N. Y. Sup. 621; Mack v. Davidson, *Id.* 730; Bernheimer v. Rindskoff, 22 N. E. 1074; Bates v. Pickett, 5 Ind. 22; Adams

v. State, 87 Ind. 573; Cleveland v. Newell, 104 Ind. 264; Louisville v. Thompson, 5 West, 837.

The law presumes in favor of both *validity and good faith* of such assignments. Townsend v. Stearns, 32 N. Y. 209; Benedict v. Huntington, 32 *Id.* 219; Coyne v. Weaver, 84 N. Y. 387; Palmer v. Marine, 46 Mich. 146; Gano v. Aldrich, 27 Ind. 294; Spencer v. Robbins, 106 Ind. 580; Henderson v. Pierce, 7 West, 257; Archibold v. Thomas, 3 Cow. 284; Peckham v. Haddack, 36 Ill. 38; Riley v. Van Hauten, 5 Miss. 428; Evans v. Sanders, 8 Porter, 497; Higgins v. Wasgatt, 34 Me. 305; Thrall v. Newell, 19 Vt. 202; Brown v. Slater, 16 Conn. 192; Brewer v. Hardy, 22 Pick. 376; Rogers v. Eagle, 9 Wend. 611; Adams v. Adams, 26 Ala. 272; Merrill v. Melchoir, 30 Miss. 516; Chittenden v. French, 21 Ill. 598; Olcatt v. Railroad, 27 N. Y. 546; Patrick v. Grant, 14 Me. 233.

An assignment is to be fairly construed, consistent with innocence, in preference to imputing a fraudulent intent to the assignor. Ginther v. Richmond, 18 Hun, 234; Rapalee v. Stewart, 27 N. Y. 315.

The inventory sufficiently discloses the place where each liability arose and the true consideration. Pratt v. Stevens, 94 N. Y. 387.

KELLAM, J. This is an action by creditors of respondent Holden to set aside a general assignment to respondent Conklin, on the ground that the same was not executed in compliance with the statute, and is therefore void as to creditors not assenting thereto. The objections are to the inventory required to be made and filed by section 4667, Comp. Laws, and to the affidavit required by section 4668 to be annexed to and filed with such inventory. The objections to the inventory are that it fails to show that it is a full and true inventory; that it fails to show that it contains a list of all the creditors of the assignor; that it fails to show the true consideration of the liability in each case, and the place where the liability arose. The objection to the affidavit annexed to the inventory is that it is not "to the effect that the same is in all respects just and true," as prescribed by section 4668, but only that the same is "true." Sections 4667 and 4668, above referred to, are as follows: "Section 4667. Within twenty days after

an assignment is made for the benefit of creditors, the assignor must make and file, in the manner prescribed by section 4669, a full and true inventory, showing: (1) All the creditors of the assignor; (2) the place of residence of each creditor, if known to the assignor, or, if not known, that fact must be stated; (3) the sum owing to each creditor, and the nature of each debt or liability, whether arising on written security, account, or otherwise; (4) the true consideration of the liability in each case, and the place where it arose; (5) every existing judgment, mortgage, or other security for the payment of any debt or liability of the assignor; (6) all property of the assignor at the date of the assignment which is exempt by law from execution; and (7) all the assignor's property at the date of the assignment, both real and personal, of every kind not so exempt, and the incumbrances existing thereon, and all vouchers and securities relating thereto, and the value of such property, according to the best knowledge of the assignor." Section 4668: "An affidavit must be made by every person executing an assignment for the benefit of creditors, to be annexed to and filed with the inventory mentioned in the last section, to the effect that the same is in all respects just and true, according to the best of such assignor's knowledge and belief." Section 4671 further provides that the assignment "is void against creditors of the assignor" if the inventory required by said section 4667 is not filed with the register of deeds of the county in which the assignor resides, "within twenty days after the date of the assignment." By section 4674 it is provided that, until the inventory and affidavit required by sections 4667 and 4668 have been made and filed, the assignee has no authority to convert the estate to the purposes of the trust.

With these statutory provisions in view, we will examine the inventory and affidavit in the respects as to which they are assailed as defective; premising, however, that, as our law authorizes and approves of the making of general assignments by insolvent debtors for the benefit of their creditors, the construction of such instruments is controlled by the same rules as apply in cases of ordinary contracts and conveyances; and that, if allowable within its terms, such interpretation and construction should

30—S. D.

be given to an assignment as will render it legal and operative, rather than that which will render it illegal and void; and that the presumption of good faith prevails. Burrill, Assignm. (5th Ed.) p. 480; Townsend v. Stearns, 32 N. Y. 209; Bank v. Dunn, 67 Ala. 381. The applicant contends that the requirements of the statutes as to the execution of general assignments for the benefit of creditors are mandatory, and this is, in general, true. The provisions of our law involved in this discussion are made so in effect for section 4671 makes the assignment void if such provisions are not complied with; but to say that a law is mandatory does not necessarily mean that there is but one exact way in which it can be executed or complied with, or that every act, condition, or provision of the law necessary to be done or observed must be set forth and described in the precise language of the statute. This statute is mandatory in the sense that no act required by it can be omitted without defeating the assignment; but every law, whether mandatory or directory. must have a reasonable interpretation and construction. A mandatory statute prescribing a definite form of words to be used in a particular case, or to accomplish a certain end, must doubtless be formally observed, but a mandatory law that requires an "inventory" to be made and filed is entirely satisfied by proof that a "schedule" or "list" was made and filed, because the words are practically synonymous. To omit to do the very act required by the law is fatal, but to omit to use the very words of the law in doing or describing it is not necessarily fatal. The law-making power of the state, as indicated by its legislation, has adopted the policy of encouraging the insolvent debtor to make an assignment of his property for the benefit of all his creditors, so that all should share ratably and equitably in its distribution. This being the established policy of the state, we regard it the duty of the courts, so far as possible within settled rules of law, to uphold every such assignment where it manifestly appears from every feature of the transaction that it was in fact designed and executed as an honest effort to accomplish such purpose.

The first objection to the inventory in this case is that it does not show "upon its face that it contains all the creditors of the

assignor." The law does not require this. It requires the making and filing of "a full and true inventory, showing all the creditors of the assignor." An assertion in its caption by the assignor that it is a full and true inventory, and shows correctly all his creditors, would be voluntary on his part. It would have no effect in establishing the schedule to be what the statute requires. It is nowhere provided or suggested that such inventory shall have a caption or heading. It shall simply be in fact an inventory, full and true, showing all the creditors. What might be the effect of making and filing an incomplete or untrue inventory is not a question in this case, for the fullness or truthfulness of the inventory, as a matter of fact, is not challenged. The contention of appellant is, as stated by himself, that "it should recite in so many words, upon its face, that it contains all the creditors," etc.; but the requirement is that the assignor must make and file, not what purports to be a full and true inventory, but what is so in fact. In support of his contention appellant cites Bank v. Noe, 86 Tenn. 21, 5 S. W. Rep. 433, and McMillan v. Knapp, 76 Ga. 171. The law under which the Tennessee case was decided was "that the debtor making a general assignment shall annex thereto a full and complete inventory or schedule, under oath, of all his property of every description." The assignor annexed to his assignment an inventory containing no recitation that it was full and complete, to which was attached a jurat as follows: "Subscribed and sworn to before me May 26, 1885, by R. H. Turley. J. N. Goldman, Clerk." The court held that the statute was not complied with because it nowhere appeared that the inventory was what the law required. The opinion says that if the inventory had stated upon its face that it was full and complete, and an affidavit of the assignor had verified its statement, it would probably have been sufficient. The inventory was condemned because there was neither statement in it that it was full and complete, nor affidavit of the assignor that it was so. The simple jurat of the officer could not take the place of either, nor give the inventory any character at all, either full or partial, or true or false. In our law the verification of the inventory by the affidavit of the assignor is made the subject of a separate section, which we will

consider later. The Georgia case was decided under a law requiring the assignor's schedule to be a full and complete inventory of "all the assets, of every kind, held, claimed, or owned by him," and so sworn to by him. The affidavit was that the schedule contained a full and complete inventory of "all the property of which" the assignor was "then possessed, both real and personal." The court said of the affidavit: "It only goes to the property actually in his possession and under his control at the time the assignment was made; the oath required by the statute is more comprehensive." It will be seen at a glance that each of these cases was decided, not upon the form or statements of the inventory, but upon the substantial ground that the inventory in the Tennessee case was not proved by the affidavit of the assignor at all, and in the Georgia case that it was not so proved to contain what the law required it should contain, to wit, all the property owned or claimed by the assignor, but, instead, only the property in his possession. Neither case is an authority to sustain appellant's position.

It is next urged that the assignment is void "because the inventory does not show the nature of each obligation,—the true consideration of the liability in each case,—nor the place where it arose." In this case the inventory shows 50 creditors, and in respect to each it shows his residence or place of business, whether the obligation rests in an account or note, the consideration of the same, its amount, and when due. For instance: "Landauer & Co., Milwaukee, Wis. Account for dry goods and notions, $1,036.55." "Eugene Prince, Lennox, D. T. Note for stallion, (add interest at 10 per cent. from Nov. 14, 1887,) $400.00." "F. A. Hansill, Lennox, D. T. Account for labor as clerk, $156.20." All others are set forth with equal particularity and fullness. The inventory is obnoxious to no criticism, unless it be under subdivision 4 of said section 4667, which requires that it shall state "the true consideration of the liability in each case, and the place where it arose." It is urged that the inventory is fatally defective in not stating "where each liability arose." Appellant argues that "the legislature had a purpose in requiring to be stated in the inventory the place where the liability arose, for it is a well-

known rule of law that the *lex loci contractus* governs in the construction of contracts." We cannot, however, bring ourselves to think that the legislature intended to impose upon the assignor the duty and responsibility of correctly deciding the often very difficult question of where a contract was really made, and what law should govern its construction,—a question in many cases concerning which, upon the same facts, the courts themselves are not agreed. We do not think this statute was intended to require this assignor to state in his inventory whether the Landauer goods, represented by the first item of account, were bought directly of them at their place of business in Milwaukee, so as to make Wisconsin the place of the contract, or were bought of Landauer's traveling salesman at the assignor's place of business in Lennox, so as to make South Dakota the place of the contract. If the goods were ordered by letter, the place of the contract might depend upon the terms of the letter. Such cases often present questions as to the place of the contract difficult to answer, and we cannot think that under this law the validity of any assignment ought to or does depend upon the ability of the assignor to answer such legal question correctly. The object of requiring the inventory to show the several facts enumerated in said section 4667 is probably to enable the assignee to understand and know the nature and extent of the claims he is to pay, to locate and identify the persons holding them, and also to furnish sufficient information upon which any creditor may institute an investigation of any claim. We think this inventory is sufficient to meet the object of the statute, and that to hold otherwise would require an unreasonably severe construction of that provision, and one that in many cases would absolutely prevent the making of a valid assignment, because of the inability of the assignor to state where, in respect to each claim, the liability actually arose. Suppose in this case a part of the goods for which the assignor claims to owe Landauer & Co. were bought in Milwaukee, Wis., a part in Lennox, S. D., and a part were ordered by mail upon terms which left the assignor in doubt as to where the liability did actually arise, and the stock assigned contained the unsold portions of each of these several purchases, incapable of iden-

tification as to which purchase they belonged to. How would it be possible for the assignor to state specifically or categorically where the liability to Landauer & Co. arose? August v. Galloway, 35 Fed. Rep. 381, a case from Georgia, is strongly relied upon to support the contention that this inventory is defective. That was a case of an assignment with preferences, and was in derogation of common-law rights; and in its opinion the court on that account repeatedly justifies a very strict construction of the law governing such assignment; but our law of assignments is not in derogation of the common law, and, even if it were, it must still be "liberally construed, with a view to effect its object and to promote justice." Section 4763, Comp. Laws. In that case the inventory was held defective because it did not state the nature of the claim, whether note or account, or what was the consideration. In the case before us the inventory is very full in this respect, as will be seen by reference to the items heretofore noticed.

The next objection is to the affidavit attached to the inventory. Section 4668 reads: "An affidavit must be made by every person executing an assignment for the benefit of creditors, to be annexed to and filed with the inventory, * * * to the effect that the same is in all respects just and true according to the best of such assignor's knowledge and belief." It will be noticed at once that the requirement is not that an affidavit must be made stating that the inventory is just and true, but that an affidavit must be made to the effect that it is just and true. Although it might be safer to use the exact words of the statute, yet they are not indispensable. If other words have the same practical effect, they may be substituted. Two cases are cited by appellant to sustain his contention for a very strict construction of the section quoted,—Fort v. Tobacco Co., (Ga.) 1 S. E. Rep. 223, and Farmer v. Cobban, (Dak.) 29 N. W. Rep. 12. Fort v. Tobacco Co. was a Georgia case. The law of that state required the inventory attached to the assignment to be verified as "full and complete." It was in fact sworn to as "just and true," and was condemned on account of such variance. Without stopping to inquire critically as to the difference in significance between these two expressions, as applied to an inventory, we can-

not help noticing one fact which in our judgment argues against a construction so strict as to make the use of the very words of the statute indispensable.   That fact is this: In nearly or quite every state is found a statute regulating general assignments by insolvent debtors for the benefit of creditors, and in each case the inventory of debts and assets has precisely the same object and performs the same office.   The necessity for fullness, truthfulness, justness, and correctness is the same under each law, and in each state; and yet we find that to reach this common object, to afford the same information to the assignee and the same protection to creditors generally, it has not been throught important to use the same words.   In Georgia, as above noticed, the inventory must be verified as "full and complete;" in California it must be "just and true;" in Illinois the inventory of assets must be "full, true; and perfect," and the schedule of claims "true and perfect;" in Wisconsin it must be "correct;" and in Kansas "true and correct."   Further examination of the statutes of different states emphasizes the fact that while, without doubt, the character and effect of the inventory was intended to be the same in each, no uniformity of expression is used in describing such character, or in defining the quality which each schedule must be sworn to possess.   Another noticeable, and we think significant, fact in determining what conformity in the use of terms must exist in this jurisdiction, at least between the inventory and affidavit attached and the statute, is this:   Section 4667, which provides for the inventory, says it must be "full and true," while section 4668 requires the same inventory to be sworn to as "just and true." Without doubt the thought of the legislature in respect to the quality of the inventory was the same, whether characterized as "full and true," as in section 4667, or as "just and true," as in section 4668.   Farmer v. Cobban, *supra*, was decided by our own territorial supreme court, but we think does not decide what is claimed for it by appellant.   In his brief he says: "The opinion of the court states that the omission of the word 'just,' and the substitution of the word 'full' in place thereof, was not a compliance with the statute, and that the assignment was void."   We do not so understand the opinion.   The case arose and was de-

cided under the same statutory provisions now in force, and which have been reproduced in this opinion. It will be noticed that the inventory required by said section 4667 must be a full and true inventory, first, of the liabilities against the assignor, with the name and place of business of each creditor, and the amount, character, and true consideration of such liability, and, second, of the assets of the assignor. To this inventory, so showing both liabilities and assets, must be attached an affidavit of the assignor to the effect that such inventory is just and true, so that the correctness of the entire inventory, both as to liabilities and assets, will be supported by the oath of the assignor. The affidavit so attached was "that the following inventory is a full and true statement of all his estate, both real and personal, in law and equity, and incumbrances thereon, and all vouchers and securities relating thereto, and the present value thereof, with a schedule of all his debts, liabilities, and property exempt, to the best of affiant's knowledge and belief." It requires no close reading of this affidavit to see that it is only the "statement of all his estate" that is sworn to as full and true. He simply swears that so far as the statement purports to be an inventory of his assets it is full and true, and that with it is "a schedule of all his debts," etc., without any attempt to characterize such schedule as full or true or just or correct, or to give it any quality whatever, except that it is a schedule. The court held that such an affidavit did not meet the requirement of the statute. The facts in that case are so essentially different from those presented by this case as to make the decision in that case entirely inapplicable here. By the law of this state, as already observed, the affidavit attached to the inventory must be "to the effect" that the same is "just and true." It was in fact sworn to as "true" only. Referring to Webster's Dictionary, we find these two words listed as synonyms, and we do not think it our duty to hunt with searching hypercriticism for some nice distinction of meaning for the purpose of defeating an instrument whose real honesty and good faith are not questioned, but which is assailed solely upon the ground that it does not formally and literally follow the terms of the statute. Giving to this statute all that can reasonably be claimed for it as manda-

tory, we are of the opinion that in the case now before us there has been a substantial compliance with its terms and its spirit. The fundamental rule of interpretation applied to statutes, mandatory as well as directory, is that words in a statute, if of common use, are to be taken in their natural and ordinary sense, without any forced or subtle construction to limit or extend their import.    These views dispose of the assignments of error.    The legal presumption being in favor of the validity and good faith of the assignment, it devolved upon appellants to show the contrary. Being of the opinion that its invalidity did not appear on the face of the papers, and no other evidence being offered to show it, the complaint was properly dismissed; and the judgment of the circuit court is affirmed.    All the judges concur.